IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JEAN-FRANCOIS BENOIST and JOYCE K. MARVEL-BENOIST, | ) ) ) | CIVIL NO. 10-00350 JMS-KSC |
| Plaintiffs, | ) ) ) | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT U.S. BANK NATIONAL |
| vs. | ) ) ) | ASSOCIATION, AS TRUSTEE FOR PHH MORTGAGE |
| U.S. BANK NATIONAL ASSOCIATION, a national bank association, AS TRUSTEE FOR JPM ALT 2006-A6; PHH MORTGAGE CORPORATION, a New Jersey corporation formerly CENDANT MORTGAGE CORP., MERSCORP. INC., a Delaware corporation; MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC.; a New York corporation, and DOES 1-100, inclusive, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CORPORATION'S MOTION FOR SUMMARY JUDGMENT |
| Defendants. | ) ) ) | |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR PHH MORTGAGE CORPORATION'S MOTION FOR SUMMARY JUDGMENT

## I.  INTRODUCTION

This action arises from a July 2006 mortgage transaction in which

Plaintiffs Jean-Francois Benoist and Joyce K. Marvel-Benoist  ("Plaintiffs")

borrowed $498,520 from Defendant PHH Mortgage Corporation, formerly

Cendant Mortgage Corp. ("PHH"), secured by a promissory note and mortgage on real property located at 47-4505 Honokaa Waipio Road, Honokaa, Hawaii 96727 (the "subject property"). The mortgage loan was transferred to U.S. Bank National Association, as Trustee for JPM ALT 2006-A6 ("U.S. Bank"), who foreclosed on the subject property after Plaintiffs became delinquent in their payments. Plaintiffs' Second Amended Complaint ("SAC") asserts various state law claims against PHH, U.S. Bank, MERS Corp. and Mortgage Electronic Registration Systems ("MERS") (collectively, "Defendants") based on the transfer of the mortgage loans to U.S. Bank and U.S. Bank's foreclosure on the subject property.

Currently before the court is U.S. Bank and PHH's[1] Motion for Summary Judgment, arguing that Plaintiffs have failed to establish a genuine issue of material fact that the mortgage was improperly assigned to U.S. Bank and/or that the foreclosure did not comply with Hawaii state law. Based on the following, the court GRANTS in part and DENIES in part Defendants' Motion for Summary Judgment.

---

[1] Although MERS Corp. and MERS did not join in the Motion for Summary Judgment, the SAC includes only one claim directed to these entities and Plaintiffs admitted at the July 30, 2012 hearing that such claim would not afford them any relief. For ease of reference, the court refers to the Motion for Summary Judgment as brought by Defendants as opposed to U.S. Bank and PHH only.

## II.  BACKGROUND

**A.    Factual Background**

In July 2006,  Plaintiffs executed an Adjustable Rate Note (the "note")

for $498,520 and a mortgage on the subject property in favor of PHH.[2]  Doc. No.

57-2, Defs.' Ex. 1 (mortgage); Doc. No. 92-4, Pls.' Ex. C (note).[3]  The mortgage

identifies PHH as the lender, and states that MERS "is a separate corporation that

is acting solely as a nominee for Lender and Lender's successors and assigns.

MERS is the mortgagee under this Security Instrument."  Doc. No. 57-2, Defs.'

Ex. 1 at 2.  The mortgage further provides:

> Borrower does hereby mortgage, grant and convey to
> MERS (solely as nominee for Lender and Lender's
> successors and assigns) and to the successors and assigns
> of MERS, with power of sale [the subject property]. . . .
> Borrower understands and agrees that MERS holds only
> legal title to the interests granted by Borrower in this
> Security Instrument, but, if necessary to comply with the
> law or custom, MERS (as nominee for Lender and
> Lender's successors and assigns) has the right:  to
> exercise any or all of those interests, including, but not

---

[2]  Plaintiffs apparently obtained a second mortgage during this same time period.  *See* Doc. No. 41, SAC ¶ 4.  This second loan is not at issue in this action.

[3]  The note includes two allonges that are both undated.  The first allonge is endorsed: "Without Recourse[;] Pay to the order of: *Bishops Gate Residential Mortgage Trust."  Doc. No. 92-4, Pls.' Ex. C at 9 of 10.  A second allonge is a blank endorsement, leaving a blank after the "Pay to the order of."  *Id.* at 10 of 10.  Both allonges are signed by Christina Vuong, with the first allonge listing her as Assistant Vice President of PHH, and the second allonge listing her with PHH and as Administrative Agent for Bishops Gate Residential Mortgage Trust.  *Id.* at 9-10 of 10.

limited to, the right to foreclose and sell the Property; and
to take and action required of the Lender.

*Id.* at 3.  Finally, the mortgage notifies Plaintiffs that "[t]he Note or a partial

interest in the Note (together with this Security Instrument) can be sold one or

more times without prior notice to Borrower."  *Id.* at 12.  On August 4, 2006, the

State of Hawaii Bureau of Conveyances recorded the mortgage.  *Id.* at 1.

In 2008, Plaintiffs began to struggle making their mortgage payments.

Doc. No. 41, SAC ¶ 22.[4]  Plaintiffs therefore contacted PHH's loss mitigation

department to seek a loan modification, and continued to call PHH each week

looking for a representative to handle their case.  *Id.*

In March 2009, Plaintiffs stopped making payments on their

mortgage.  *Id.* ¶ 23.  Although Plaintiffs submitted a loan modification application

on April 30, 2009, *id.*, Plaintiffs received notice on July 13, 2009 that U.S. Bank

was commencing foreclosure proceedings.  *Id.* ¶ 24.  U.S. Bank assured Plaintiffs

that foreclosure would not move forward until Plaintiffs' loan modification

application was given proper consideration.  *Id.*

On September 28, 2009, MERS, solely as nominee for PHH, executed

_____

[4]  Because the SAC is verified, it may be used as an opposing affidavit if it sets forth
specific facts and is based on personal knowledge.  *Schroeder v. McDonald,* 55 F.3d 454, 460
(9th Cir. 1995); *McElyea v. Babbitt,* 833 F.2d 196, 197 (9th Cir. 1987).

an Assignment of Mortgage to U.S. Bank.[5]  Doc. No. 92-3, Pls.' Ex. B.

On December 31, 2009, U.S. Bank recorded a Notice of Mortgagee's Intention to Foreclose Under Power of Sale ("Notice of Foreclosure") with the State of Hawaii Bureau of Conveyances.  The Notice of Foreclosure identifies U.S. Bank as mortgagee and asserts that it will hold a public auction of the subject property on March 2, 2010.  Doc. No. 57-3, Defs.' Ex. 2 at p. 7 of 13.  The terms of the sale include that "[a]t the close of the auction Purchaser shall pay at least

---

[5]  The mortgage loan was apparently securitized -- U.S. Bank is a named as a Defendant in its capacity as trustee for JPM-ALT 2006-A6.  Although Plaintiffs submit with their Opposition the expert testimony of Daniel M. Edstrom regarding the securitization of the mortgage loan, Plaintiffs did not properly disclose this expert testimony pursuant to Federal Rule of Civil Procedure 26(a)(2).  Specifically, the Second Amended Rule 16 Scheduling Order provides that Plaintiffs shall disclose "the identity *and written report* of any person who may be used at trial to present expert evidence" by December 26, 2011.  Doc. No. 55 (emphasis added).  On October 12, 2011, Plaintiffs filed an "Expert Witness Disclosure" identifying Edstrom as their expert witness, yet they never produced a written report.

The court will not consider this late-disclosed expert testimony -- Plaintiffs provide no argument that their late disclosure was "substantially justified or harmless" that would allow the court to consider it.  *See* Fed. R. Civ. P. 37(c)(1); *see also Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008) (explaining that under Rule 37(c)(1), the exclusion of evidence is appropriate unless the failure to disclose was "substantially justified or harmless"); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001) ("Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness.").  Rather, at the July 30, 2012 hearing Plaintiffs argued that their tardy expert disclosure was due to Defendants' failure to comply with discovery requests.  Plaintiffs did not seek an extension of the expert discovery deadline, explain how Defendants' failure to comply with discovery hindered their expert disclosure, or even file a Rule 56(d) Motion.  As a result, the court will not consider the expert testimony of Mr. Edstrom, and the exhibits Plaintiffs submit regarding securitization are insufficient on their own to establish the facts regarding securitization of the mortgage loan.

Regardless of these evidentiary rulings, however, as explained below Plaintiffs' claim regarding securitization fails as a matter of law such that consideration of this evidence would not affect the court's analysis.

10% of the highest successful bid price ("Bid") by cashier's or certified check and deliver it to the closing escrow and title company designated by the Mortgagee; provided, however, that Mortgagee may submit a credit bid up to the amount in writing of the secured indebtedness." *Id.* at p. 8 of 13. U.S. Bank published the Notice of Foreclosure in the Honolulu Advertiser on January 15, 22, and 29, 2010. *Id.* at 11 of 13.

On February 17, 2010, Plaintiffs received a loan modification proposal that would lower their interest rate only one percent and otherwise maintain the loan as an interest-only loan for the full amount plus an additional $42,701.04 for the unpaid interest and fees. Doc. No. 41, SAC ¶ 27. Plaintiffs rejected the offer and reapplied for a loan modification. *Id.*

In the meantime, the foreclosure auction was postponed until July 21, 2010. The Mortgagee's Affidavit of Foreclosure Under Power of Sale ("Mortgagee's Affidavit"), signed by Derek Wong on behalf of U.S. Bank and recorded in the State of Hawaii Bureau of Conveyances on August 5, 2010, asserts that "each postponement was publicly announced by crying out the postponement date at the time and place of the scheduled auction." *Id.* at 3 of 13. In comparison, Plaintiffs assert that "Defendants did not on each and every postponement announce the continued sale date [as required by HRS § 667-5(d)]." Doc. No. 41,

SAC ¶ 87.

At the July 21, 2010 auction, U.S. Bank was the high bidder with a credit bid for $390,000.  Doc. No. 57-3, Defs.' Ex. 2.

**B.    Procedural Background**

On June 22, 2010, Plaintiffs filed this action, and their SAC asserts claims titled (1) Violation of Hawaii Revised Statutes [("HRS")] Chapter 667, Lack of Legal Right to Foreclose (Defendant U.S. Bank); (2) Violation of [HRS] Chapter 667, Failure to Comply with terms of HRS [§] 667:5-10[6] (Defendant U.S. Bank); (3) Wrongful Foreclosure (Defendant U.S. Bank and PHH); and (4) Quiet Title (Defendants Claiming Any Interest in the Subject Property).

On January 25, 2012, PHH and U.S. Bank filed their Motion for Summary Judgment.  Plaintiffs filed an Opposition on July 9, 2012, and Defendants filed a Reply on July 16, 2012.[7]  A hearing was held on July 30, 2012.

### III.  STANDARD OF REVIEW

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed.

---

[6]   The HRS does not contain a "§ 667:5-10," and it appears that Plaintiffs intended to cite to HRS § 667-5 et seq.

[7]   At the request of the parties, the court granted several continuances of the hearing on the Motion for Summary Judgment to allow for discovery and settlement discussions.

R. Civ. P. 56(a). Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on

which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor" (citations omitted)).

## IV. DISCUSSION

Defendants assert that they are entitled to summary judgment on each of Plaintiffs' claims.[8] The court addresses each claim in turn.

### A. Count I -- HRS § 667-5, Based on Lack of Legal Right to Foreclose (Defendant U.S. Bank)

HRS § 667-5(a) provides:

> When a power of sale is contained in a mortgage, and where the mortgagee, the mortgagee's successor in

---

[8] Citing *Cootey v. Countrywide Home Loans, Inc.*, 2011 WL 4853333 (D. Haw. Oct. 12, 2011), Defendants also argue that because the SAC asserts state law claims only, the court should decline jurisdiction over this action. Defendants' reliance on *Cootey* is misplaced -- in *Cootey*, federal claims were the sole basis of the court's jurisdiction and the court declined jurisdiction over the remaining state law claims once the federal claims were dismissed. *Id.* at *9. In comparison, jurisdiction in this action is based on diversity of citizenship.

interest, or any person authorized by the power to act in
the premises, desires to foreclose under power of sale
upon breach of a condition of the mortgage, the
mortgagee, successor, or person shall be represented by
an attorney who is licensed to practice law in the State
and is physically located in the State.

The SAC asserts that U.S. Bank violated HRS § 667-5 when it

foreclosed on the subject property because it is not "the mortgagee, the

mortgagee's successor in interest, or any person authorized by the power to act."

Specifically, the SAC asserts that (1) the assignment from MERS on behalf of

PHH to U.S. Bank was defective because MERS did not have legal authority to

assign the mortgage; Doc. No. 41, SAC ¶¶ 62-67; and (2) the note and/or mortgage

were not properly transferred to U.S. Bank pursuant to the terms of a Pooling and

Servicing Agreement ("PSA") when the mortgage loan was securitized. *Id.* ¶¶ 68-

82. Defendants argue that summary judgment should be granted on this claim

based on this court's previous rulings in other cases holding that MERS has

authority to assign all beneficial interest in the mortgage and that a borrower does

not have standing to assert claims for failure to follow the PSA. The court agrees.

As to MERS's authority to transfer the mortgage on behalf of PHH to

U.S. Bank, this court recently rejected a similar claim in *Pascual v. Aurora Loan*

*Services, LLC*, 2012 WL 2355531 (D. Haw. June 19, 2012), and its reasoning

applies equally here. As stated in *Pascual*, MERS's role was recently explained by

the Ninth Circuit in *Cervantes v. Countrywide Home Loans*, 656 F.3d 1034 (9th

Cir. 2011), as follows:

> MERS is a private electronic database, operated by
> MERSCORP, Inc., that tracks the transfer of the
> "beneficial interest" in home loans, as well as any
> changes in loan servicers. After a borrower takes out a
> home loan, the original lender may sell all or a portion of
> its beneficial interest in the loan and change loan
> servicers. The owner of the beneficial interest is entitled
> to repayment of the loan. For simplicity, we will refer to
> the owner of the beneficial interest as the "lender." . . .
> At the origination of the loan, MERS is designated
> in the deed of trust as a nominee for the lender and the
> lender's "successors and assigns," and as the deed's
> "beneficiary" which holds legal title to the security
> interest conveyed. If the lender sells or assigns the
> beneficial interest in the loan to another MERS member,
> the change is recorded only in the MERS database, not in
> county records, because MERS continues to hold the
> deed on the new lender's behalf. If the beneficial interest
> in the loan is sold to a non-MERS member, the transfer
> of the deed from MERS to the new lender is recorded in
> county records and the loan is no longer tracked in the
> MERS system.

*Id*. at 1038-39. *Cervantes* held that claims attacking the MERS recording system

as a fraud fail, given that mortgages generally disclose MERS's role as acting

"solely as nominee for Lender and Lender's successors and assigns," and that

MERS has the right to foreclose and sell the property. *Id.* at 1042.

Just like in *Cervantes*, the mortgage expressly notifies Plaintiffs of

MERS's role as the nominee for the "Lender and Lender's successors and assigns." The mortgage clearly outlines MERS's role by providing that: (1) MERS "is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns," Doc. No. 57-3, Def.'s Ex. 1 at 2; (2) Plaintiffs "mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale [the subject property]," *id.* at 3; (3) "Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrowers in this Security Instrument," *id.*; and (4) "[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower." *Id.* at 12. Further, MERS exercised this authority granted to it by PHH by assigning the mortgage to U.S. Bank. *See* Doc. No. 92-3, Pls.' Ex. B.

In light of the express disclosures in the mortgage giving MERS the authority to act on behalf of PHH and the transfer of the mortgage to U.S. Bank, Plaintiffs have no basis to assert that PHH did not authorize MERS to transfer the mortgage. Indeed, this court has already rejected numerous borrowers' claims challenging MERS's authority to assign, on behalf of a lender, the mortgage. *See, e.g.*, *Fed. Nat'l Mortg. Ass'n v. Kamakau*, 2012 WL 622169, at *4 & *5 n.5 (D. Haw. Feb. 23, 2012) (explaining that a borrower cannot challenge an assignment

that he was not a party to, and that plaintiff may not assert claims based on the argument that MERS lacked authority to assign its right to foreclose); *Lindsey v. Meridias Cap., Inc.*, 2012 WL 488282, at *3 n.6 (D. Haw. Feb. 14, 2012) ("'[A]ny argument that MERS lacked the authority to assign its right to foreclose and sell the property based on its status as 'nominee' cannot stand in light of [*Cervantes*.]" (quoting *Velasco v. Sec. Nat'l Mortg. Co.*, 2011 WL 4899935, at *11 (D. Haw. Oct. 14, 2011)); *Teaupa v. U.S. Nat'l Bank N.A.*, 836 F. Supp. 2d 1083, 1103 (D. Haw. 2011) (dismissing without leave to amend claim asserting that MERS lacks standing to foreclose); *Abubo v. Bank of New York Mellon*, 2011 WL 6011787, at *8 (D. Haw. Nov. 30, 2011) (dismissing claim challenging MERS's authority to assign the mortgage on the basis that "the involvement of MERS in the assignment cannot be a basis for voiding the assignment, much less for a claim of fraud").

As to Plaintiffs' claim regarding improper securitization of the mortgage loan, this court addressed a similar claim in *Abubo*, and its reasoning applies with equal force in this action. In *Abubo*, the plaintiffs asserted a fraud claim based on the allegation that the assignment was invalid because it was made to a "closed" securitization trust in violation of the PSA. 2011 WL 6011787, at *8. As explained in *Abubo*, this argument has been rejected in recent decisions by many courts -- which this court finds persuasive -- either (1) because a third party

13

lacks standing to raise a violation of a PSA, or (2) because noncompliance with terms of a PSA is irrelevant to the validity of the assignment (or both).

For example, *Anderson v. Countrywide Home Loans*, 2011 WL 1627945 (D. Minn. Apr. 8, 2011), addressed the identical allegations that an assignment to a securitization trust was invalid because the PSA provided that the trust ceased accepting mortgages several years before the contested assignment from MERS. *Id.* at *4. *Anderson* concluded that "compliance with the chain of assignment mandated by a PSA was not relevant to the validity of the assignee's interest." *Id.* (citing *Peterson-Price v. U.S. Bank Nat'l Ass'n*, 2010 WL 1782188, at *10 (D. Minn. May 4, 2010)). It reasoned in part that there was "no authority that an assignment made in contravention of a PSA is invalid." *Id.* It also concluded that plaintiffs did not have standing to challenge the validity of the assignment because they were not parties to the PSA. *Id.*

Many other recent and persuasive decisions follow similar logic. *See Greene v. Home Loan Serv., Inc.*, 2010 WL 3749243, at *4 (D. Minn. Sept. 21, 2010) ("[P]laintiffs are not a party to the [PSA] and therefore have no standing to challenge any purported breach of the rights and obligations of that agreement."); *Long v. One West Bank*, 2011 WL 3796887, at *4 (N.D. Ill. Aug. 24, 2011) (rejecting argument that assignment executed after trust was closed in violation of

the PSA rendered transaction invalid, reasoning that non-parties to the PSA lacked standing to challenge the assignment and "it is irrelevant to the validity of the assignment whether or not it complied with the PSA"); *Juarez v. U.S. Bank Nat'l Ass'n*, 2011 WL 5330465, at \*4 (D. Mass. Nov. 4, 2011) (reasoning that plaintiff "does not have a legally protected interest in the assignment of the mortgage to bring an action arising under the PSA"); *Correia v. Deutsche Bank Nat'l Trust Co.*, 452 B.R. 319, 324-25 (B.A.P. 1st Cir. 2011) (rejecting argument by debtors that mortgage assignment was invalid based upon non-compliance with PSA, as debtors were neither parties, nor third-party beneficiaries, of the PSA); *cf. Cooper v. Bank of New York Mellon*, 2011 WL 3705058, at \*17 (D. Haw. Aug. 23, 2011) (dismissing breach of contract count brought by delinquent mortgagors for breach of PSA, reasoning that mortgagors were not third-party beneficiaries of PSA and thus had no standing to enforce its terms).  In short, even assuming terms of the PSA were not followed, Plaintiffs may not set aside the assignment of the mortgage from PHH to U.S. Bank on that basis.

Plaintiffs distinguish their claim from *Abubo* on the basis that Plaintiffs are not raising claims for breach of the PSA, but are merely pointing to the noncompliance with the PSA "as evidence . . . that the Trust did not own the Note and Mortgage linked to the subject property at the time of foreclosure."  Doc.

No. 91, Pls.' Opp'n at 20-21.  To be clear about Plaintiffs' claim, Plaintiffs are not

asserting that U.S. Bank has no basis to assert that it is the mortgagee or otherwise

has no connection to the mortgage loan.[9]  Rather, the SAC asserts that the transfer

of the mortgage loan to U.S. Bank failed "to comply strictly with the requirements

of the PSA."  Doc. No. 41, SAC ¶ 82.  As a result, regardless of how Plaintiffs

label their claim, it boils down to the basic assertion that noncompliance with the

PSA prevented U.S. Bank from properly holding the mortgage loan.  *See* Doc. No.

41, SAC ¶¶ 68-83.  This claim -- that noncompliance with the PSA shows that the

assignment was invalid -- is indistinguishable from *Abubo*.

Plaintiffs further argue that the court should follow *Deutsche Bank

National Trust Co. v. Williams*, 2012 WL 1081174 (D. Haw. Mar. 29, 2012),

which Plaintiffs contend supports that a borrower may assert a claim that the terms

of the PSA prevented the proper transfer of the mortgage loan.  Plaintiffs' reliance

on *Williams* is misplaced.  *Williams* was a foreclosure action brought in federal

court by the mortgagee.  *Williams* found that under the particular facts presented,

the mortgagee did not establish its legal standing to bring the action both because

---

[9]  At the July 30, 2012 hearing, Plaintiffs argued in conclusory fashion that U.S. Bank is
not the mortgagee.  But the SAC includes no allegations suggesting that U.S. Bank has no
connection to the mortgage loan; rather, the SAC asserts that technical violations of the PSA
invalidated the transfer of the mortgage loan to U.S. Bank.  In other words, this is not the case
where the borrower asserts that a third party unrelated to the mortgage loan improperly
foreclosed on the subject property.

the alleged transferor was in bankruptcy at the time of the mortgage assignment and because Plaintiff apparently obtained the mortgage loan through a PSA even though the Complaint alleged no such facts. *Id.* at *4. In comparison to *Williams*, in this action Plaintiffs are the borrowers and assert claims against the mortgagee; it should go without saying that a defendant need not establish its standing to defend against claims. *Williams* is of no help to Plaintiffs.

Finally, Plaintiffs vaguely argue that summary judgment should not be granted because Defendants have failed to comply with discovery requests (which are the subject of a Motion for Sanctions currently pending before Magistrate Judge Kevin S.C. Chang). Yet Plaintiffs fail to address in any meaningful manner how discovery may affect the summary judgment analysis (whether for this or any other claim in the SAC).[10] Indeed, Plaintiffs did not seek a continuance of the hearing on Defendants' Motion for Summary Judgment pursuant to Rule 56(d), and otherwise failed to explain how the discovery sought is necessary to oppose Defendants' Motion for Summary Judgment. *See Family Home & Fin. Ctr. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008) (explaining that a party seeking relief under Rule 56(d) must show "(1) it has set forth in affidavit

---

[10] As to Count I, the court grants summary judgment based on the *legal* determination that a borrower does not have standing to challenge compliance with a PSA (or assert derivative claims based on such non-compliance). As a result, additional facts regarding the PSA (whether submitted through expert testimony or otherwise), would not affect the court's analysis.

form the specific facts it hopes to elicit from further discovery; (2) the facts sought

exist; and (3) the sought-after facts are essential to oppose summary judgment");

*see also Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1100 (9th Cir.

2006). Summary judgment is therefore appropriate in favor of Defendants. *See*

*Family Home & Fin. Ctr.*, 525 F.3d at 827 (stating that failure to comply with the

Rule 56(d) requirements "is a proper ground for denying discovery and proceeding

to summary judgment." (quotations omitted)).

The court therefore GRANTS Defendants' Motion for Summary

Judgment on Count I of the SAC.

**B.      Count II -- HRS § 667-5, Failure to Comply with Terms of HRS [§] 667-5 et seq. (Defendant U.S. Bank)**

Count II asserts that U.S. Bank failed to comply with the requirements

of HRS § 667-5 when it (1) failed to pay an advance deposit of ten percent of its

bid; (2) improperly claimed the right to make a credit bid; (3) failed to publish the

location of the auction; and (4) failed to publicly announce the postponements of

the foreclosure sale. Doc. No. 41, SAC ¶ 85. Defendants argue that the

Mortgagee's Affidavit establishes that U.S. Bank complied fully with the

requirements outlined in HRS § 667-5, and that its credit bid was proper. Based on

the following, the court agrees with Defendants in part.

The court agrees with Defendants that Plaintiffs' claims regarding the

amount of down payment and credit bidding fail as a matter of law. The only requirement regarding a down payment is contained in HRS § 667-5.7, which provides that "the successful bidder at the public sale, as the purchaser, shall not be required to make a down payment to the foreclosing mortgagee of more than ten percent of the highest successful bid." As explained in *Angel v. BAC Home Loans Servicing, LP*, 2011 WL 1230413, at *5 (D. Haw. Mar. 30, 2011), "HRS § 667-5.7 sets a ceiling on the amount a bidder may be required to pay as a downpayment, but it does not impose a requirement that a downpayment be made or otherwise prohibit credit bids." The court therefore GRANTS Defendants' Motion for Summary Judgment as to Plaintiffs' claims that the foreclosure was improper due to U.S. Bank's credit bid and/or failure to pay at least ten percent of its bid.

The court also agrees that there is no genuine issue of material fact that U.S. Bank published the location of the auction. The Mortgagee's Affidavit provides that Wong:

> Once in each of three successive weeks, with the last publication having been not less than 14 days before the public auction sale, caused publication in The Honolulu Advertiser, a newspaper having a general circulation in the County of Hawaii, State of Hawaii, an advertisement setting forth a summary description of the subject mortgaged property, the mortgagee's intention to foreclosure [sic] pursuant to the power of sale under the

19

> mortgage, and the date, time and place for the public
> auction sale, a copy of which notice is attached hereto as
> Exhibit "E" and made part hereof.

Doc. No. 57-3, Defs.' Ex. 2 at 3 of 13.  In turn, Exhibit E is an Affidavit of

Publication providing a copy of the publication, which states, among other things,

that "Mortgagee will hold a sale by public auction of the real property described in

the Mortgage on March 2, 2010 at 12:00 PM on the Hamakua Lanai of the State

Office building, 75 Aupuni Street, Hilo."  Doc. No. 100-1, Defs.' Ex. 4.[11]  Because

the publication states the location of the auction, the court GRANTS Defendants'

Motion for Summary Judgment on Plaintiffs' claim that U.S. Bank failed to

publish this information.

The court disagrees, however, that Defendants have established the

lack of a genuine issue of material fact that they publicly announced the

postponement(s) of the foreclosure sale.  Pursuant to HRS § 667-5(d), U.S. Bank

was permitted to postpone the sale "by public announcement made by the

mortgagee or by a person acting on the mortgagee's behalf. . . ."  To establish their

compliance with HRS § 667-5(d), Defendants rely on the Mortgagee's Affidavit in

which Derek Wong, attorney for U.S. Bank, asserts in summary fashion that

"[u]pon the scheduled date, time and place, affiant caused said sale to be postponed

---

[11]  Because the initial exhibit was illegible, at the court's request Defendants re-submitted
Exhibit E to the Mortgagee's Affidavit as Defendants' Exhibit 4 on July 30, 2012.

to 07/21/10.  Each postponement was publicly announced by crying out the postponement date at the time and place of the scheduled auction."  Doc. No. 57-3, Defs.' Ex. 2 at 3 of 13.  In comparison, Plaintiffs assert that "Defendants did not on each and every postponement announce the continued sale date [as required by HRS § 667-5(d)]."  Doc. No. 41, SAC ¶ 87.

The assertions by both parties are equally conclusory -- the court is left completely in the dark regarding the basis of each assertion and is given no details regarding the postponements (their number, dates, location, witnesses, etc.).  What is clear, however, is that these conclusory statements are in direct conflict with one another.  Viewing these statements in a light most favorable to Plaintiffs, the court finds that they create a genuine issue of material fact whether Defendants did indeed properly announce the postponement(s) of the foreclosure sale.[12]  The court therefore DENIES Defendants' Motion for Summary Judgment as to Plaintiffs' claim that U.S. Bank failed to properly postpone the sales of the subject property.

---

[12] Defendants argue that the court must accept the Mortgagee's Affidavit as evidence pursuant to HRS § 667-8, which provides that where it appears from the Mortgagee's Affidavit that "the affiant has in all respects complied with the requirements of the power of sale and the statute . . . [then the Mortgagee's Affidavit] shall be admitted as evidence that the power of sale was duly executed."  Even if the court accepts that HRS § 667-8 applies to the Mortgagee's Affidavit (an issue the court need not decide for purposes of the Motion for Summary Judgment), it simply permits the Mortgagee's Affidavit to be accepted by the court as evidence; it does not follow that the court must consider it as conclusive evidence for purposes of summary judgment or trial.

**C.    Count III -- Wrongful Foreclosure (Against Defendant U.S. Bank and PHH)**

Count III of the SAC asserts that U.S. Bank improperly foreclosed on the subject property because (1) Plaintiffs were not in default of their loan; and (2) U.S. Bank assured Plaintiffs that the foreclosure would be postponed during the loan modification process.  Doc. No. 41, SAC ¶¶ 93-97.  Defendants argue that summary judgment should be granted on this claim because the undisputed evidence establishes that Plaintiffs were in default on their loan and U.S. Bank's alleged assurances cannot be the basis of any fraud/misrepresentation claim.[13]  The court agrees with Defendants in part.

As to Plaintiffs' first claim, it is undisputed that Plaintiffs stopped paying their mortgage loan in March 2009.  *See* Doc. No. 41, SAC ¶ 23.  Plaintiffs therefore cannot dispute that they breached their duties under the mortgage, which required them to "pay when due to principal of, and interest, on the debt evidenced by the Note and any prepayment charges and late charges due under the Note."[14]

_____

[13]  At the July 30, 2012 hearing, Plaintiffs confirmed that although this claim is titled "wrongful foreclosure," it is based on misrepresentation and/or fraud.

[14]  In opposition, Plaintiffs argue that the SAC asserts that they were not in default and Defendants have otherwise failed to present evidence of default.  Doc. No. 91, Pls.' Opp'n at 24-25.  This argument borders on the frivolous.  The court does not accept as evidence the legal conclusions contained in the SAC, especially where the SAC's specific factual allegations within Plaintiffs' personal knowledge establish that they defaulted on the mortgage.  *See* Doc. No. 41, SAC ¶ 23.

Doc. No. 57-2, Defs.' Ex. 1 at 4 of 15. The court therefore GRANTS Defendants'

Motion for Summary Judgment on Plaintiffs' claim that they were not in default.

As to Plaintiffs' second claim -- that U.S. Bank misrepresented that it

would not foreclose on the subject property while Plaintiffs were seeking a loan

modification -- Defendants argue that the court should follow *Doran v. Wells*

*Fargo Bank*, 2011 WL 2160643, at *12 (D. Haw. May 31, 2011), which explains

that promises regarding what may occur in the future are generally not actionable.

Specifically, *Doran* provides:

> [U]nder Hawaii law, the false representation forming the basis of a fraud claim "must relate to a past or existing *material* fact and not the occurrence of a future event." *Joy A. McElroy, M.D., Inc. v. Maryl Group, Inc.*, 107 Haw. 423, 433, 114 P.3d 929, 939 (Haw. App. 2005) (citations and block quote format omitted) (emphasis in original). Further, even if the allegations satisfy the other elements of a fraud claim, "[f]raud cannot be predicated on statements which are promissory in their nature, or constitute expressions of intention, and an actionable representation cannot consist of mere broken promises, unfulfilled predictions or expectations, or erroneous conjectures as to future events[.]" *Id*. (citations and block quote format omitted) (emphasis in original). The exception to this general rule is that "[a] promise relating to future action or conduct will be actionable, however, if the promise was made without the present intent to fulfill the promise." *Id*. (citations and block quote format omitted) (emphasis in *McElroy*).

*See also Camat v. Fed. Nat'l Mortg. Ass'n*, 2012 WL 2370201, at *6 (D. Haw.

June 22, 2012) (outlining same proposition) (emphasis omitted).

But *Doran* is not applicable.  The basis of Plaintiffs' claim is not based on a  prediction or expectation of what may happen in the future; rather, Plaintiffs assert that U.S. Bank conducted the foreclosure sale while at the same time "reassuring Plaintiffs that [it] would be postponed during the Plaintiffs' pending loss mitigation."  Doc. No. 41, SAC ¶ 94.  In other words, Plaintiffs assert that U.S. Bank represented that it would not foreclose in the present time, but then did so anyway. [15]  The court therefore DENIES Defendants' Motion for Summary Judgment as to Plaintiffs' claim that U.S. Bank promised that it would not foreclose while Plaintiffs were in the loan modification process.

## D.    Count IV -- Quiet Title (Against Defendants Claiming Any Interest in the Subject Property)

Count IV of the SAC asserts that Defendants are without any legal or

_____

[15]  Even if Plaintiffs' claim could be viewed as asserting a misrepresentation regarding future events, Defendants failed to address in any manner whether such promise was "made without the present intent to fulfill the promise."  *See Joy A. McElroy, M.D., Inc. v. Maryl Group, Inc.*, 107 Haw. 423, 433, 114 P.3d 929, 939 (Haw. App. 2005).  As a result, even if Plaintiffs assert a misrepresentation claim based on future events, Defendants have failed to establish that such claim is not actionable.
In their Motion for Summary Judgment, Defendants relied solely on *Doran* in seeking summary judgment as to Count III.  In their Reply, Defendants argued for the first time that at the time of foreclosure, "there is no proof that there was an existing offer of loan modification or that one was promised."  Doc. No. 96, Defs.' Reply at 12.  The court will not consider substantive arguments raised for the first time in a Reply.  *See, e.g.*, *Hi-Tech Rockfall Const., Inc. v. Cnty. of Maui*, 2009 WL 529096, at *18 n.9 (D. Haw. Feb. 26, 2009) ("Local Rule 7.4 provides that '[a]ny arguments raised for the first time in the reply shall be disregarded.'"); *Coos Cnty. v. Kempthorne*, 531 F.3d 792, 812 n.16 (9th Cir. 2008) (declining to consider an argument raised for the first time in a reply brief).

equitable right, claim, or interest in the subject property (due to Plaintiffs' claims addressed above) such that Plaintiffs are entitled to a declaration that the title to subject property is vested in Plaintiffs alone. Doc. No. 41, SAC ¶¶ 99-104. Defendants argue that Plaintiffs have failed to allege a necessary element of this claim -- that Plaintiffs are able to tender the amount of indebtedness. Doc. No. 56-1, Defs.' Mot. at 10. The court agrees.

As this court has explained in numerous orders,[16] in order to assert a claim for "quiet title" against a mortgagee, a borrower must allege they have paid, or are able to tender, the amount of indebtedness. "A basic requirement of an action to quiet title is an allegation that plaintiffs 'are the rightful owners of the property, *i.e.*, that they have satisfied their obligations under the deed of trust.'" *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 975 (N.D. Cal. 2010) (quoting *Kelley v. Mortg. Elec. Registration Sys.*, 642 F. Supp. 2d 1048, 1057 (N.D. Cal. 2009)). "[A] borrower may not assert 'quiet title' against a mortgagee without first paying the outstanding debt on the property." *Id.* (applying California law -- *Miller v. Provost*, 33 Cal. Rptr. 2d 288, 290 (Cal. App.

---

[16] *See, e.g.*, *Fed. Nat'l Mortg. Ass'n v. Kamakau*, 2012 WL 622169, at *9 (D. Haw. Feb. 23, 2012); *Lindsey v. Meridias Cap., Inc.*, 2012 WL 488282, at *9 (D. Haw. Feb. 14, 2012); *Menashe v. Bank of New York*, --- F. Supp. 2d ----, 2012 WL 397437, at *10 (D. Haw. Feb. 6, 2012); *Teaupa v. U.S. Nat'l Bank N.A.*, 836 F. Supp. 2d 1083, 1103 (D. Haw. 2011); *Abubo v. Bank of New York Mellon*, 2011 WL 6011787, at *5 (D. Haw. Nov. 30, 2011); *Long v. Deutsche Bank Nat'l Trust Co.*, 2011 WL 5079586, at *12 (D. Haw. Oct. 24, 2011).

1994) ("[A] mortgagor of real property cannot, without paying his debt, quiet his title against the mortgagee") (citation omitted), and *Rivera v. BAC Home Loans Servicing, L.P.*, 2010 WL 2757041, at *8 (N.D. Cal. July 9, 2010)).

Plaintiffs offer a number of vague and conclusory arguments for why the court should not follow this caselaw, none of which withstands scrutiny. First, Plaintiffs argue that their claim is brought pursuant to common law (as opposed to HRS § 669-1) such that they need not tender the loan proceeds before the court can grant relief. Plaintiffs raise a distinction without a difference -- the cases cited above held that tender is required, regardless of whether the claim is based on common law or statute. Second, Plaintiffs argue that "[t]o dismiss the declaratory relief sought by Plaintiffs without an evidentiary hearing and while served discovery was pending is inequitable." Doc. No. 99, Pls.' Opp'n at 26. But Plaintiffs offer no explanation as to how discovery is relevant to this claim and do not seek a continuance pursuant to Federal Rule of Civil Procedure 56(d). Finally, Plaintiffs assert that this claim should stand because "[i]f the secured interest proffer [sic] by US Bank is declared to be invalid via this action, the debt would be discharged and unsecured." *Id.* Because none of the Plaintiffs' claims challenging the actual note and mortgage remains, this argument is moot.

In sum, the court GRANTS Defendants' Motion for Summary

Judgment on Count IV of the SAC.  Because this analysis applies equally to all Defendants and is not factually dependent, summary judgment is granted on this claim as to all Defendants.

## V.  CONCLUSION

Based on the above, the court GRANTS in part and DENIES in part Defendants' Motion for Summary Judgment.  Remaining in this action are (1) Count II of the SAC, to the extent it asserts a claim against U.S. Bank for failure to comply with HRS § 667-5's requirements that each postponement of the foreclosure be publicly announced, and (2) Count III of the SAC, to the extent it asserts a claim against U.S. Bank for misrepresenting that it would not foreclose during the loan modification process.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, August 2, 2012.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Benoist v. U.S. Bank Nat'l Ass'n, as Trustee for JPM ALT 2006-A6.*, Civ. No. 10-00250 JMS-KSC, Order Granting in Part and Denying in Part Defendant U.S. Bank National Association, as Trustee for PHH Mortgage Corporation's Motion for Summary Judgment