IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JEAN-FRANCOIS BENOIST and JOYCE K. MARVEL-BENOIST, <br><br> Plaintiffs, <br><br> vs. <br><br> U.S. BANK NATIONAL ASSOCIATION, a national bank association, AS TRUSTEE FOR JPM ALT 2006-A6; PHH MORTGAGE CORPORATION, a New Jersey corporation formerly CENDANT MORTGAGE CORP., MERSCORP. INC., a Delaware corporation; MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC.; a New York corporation, and DOES 1-100, inclusive, <br><br> Defendants. | CIVIL NO. 10-00350 JMS-KSC <br><br> FINDINGS OF FACT AND CONCLUSIONS OF LAW |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**I.  INTRODUCTION**

The court conducted a non-jury trial in this case on October 23, 2012. Pursuant to Federal Rule of Civil Procedure 52(a), the following constitute the court's Findings of Fact ("Findings") and Conclusions of Law ("Conclusions"). To the extent any Findings as stated may also be deemed to be Conclusions, they

shall also be considered Conclusions. Similarly, to the extent any Conclusions as stated may be deemed to be Findings, they shall also be considered Findings. *See In re Bubble Up Delaware, Inc.*, 684 F.2d 1259, 1262 (9th Cir. 1982).

## II. **OVERVIEW**

This action arises from a July 2006 mortgage transaction in which Plaintiffs Jean-Francois Benoist and Joyce K. Marvel-Benoist ("Plaintiffs") borrowed $498,520 from PHH Mortgage Corporation, formerly Cendant Mortgage Corp. ("PHH"), secured by a promissory note and mortgage on real property located at 47-4505 Honokaa Waipio Road, Honokaa, Hawaii 96727 (the "subject property"). The mortgage loan was subsequently transferred to Defendant U.S. Bank National Association, as Trustee for JPM ALT 2006-A6 ("Defendant" or "U.S. Bank"), who foreclosed on the subject property after Plaintiffs became delinquent in their payments. During the time that U.S. Bank was seeking to foreclose, Plaintiffs were seeking a loan modification and the auction on the subject property was postponed several times. The trial centered on claims against U.S. Bank for (1) failure to comply with Hawaii Revised Statutes ("HRS") § 667-5's requirements that each postponement of the foreclosure be publicly announced, and (2) misrepresenting that it would not foreclose during the loan modification process.

For the reasons set forth below, the court finds that Plaintiffs have failed to prove by a preponderance of the credible evidence that U.S. Bank either failed to publicly announce each postponement in compliance with HRS § 667-5 or made any representations to Plaintiffs.

### III. PROCEDURAL HISTORY

On June 22, 2010, Plaintiffs filed this action, and their Second Amended Complaint ("SAC") asserted claims titled (1) Violation of Hawaii Revised Statutes [("HRS")] Chapter 667, Lack of Legal Right to Foreclose (Defendant U.S. Bank); (2) Violation of [HRS] Chapter 667, Failure to Comply with terms of HRS [§] 667:5-10[1] (Defendant U.S. Bank); (3) Wrongful Foreclosure (Defendant U.S. Bank and PHH); and (4) Quiet Title (Defendants Claiming Any Interest in the Subject Property).

On January 25, 2012, PHH and U.S. Bank filed a Motion for Summary Judgment. On August 3, 2012,[2] the court granted in part and denied in part the Motion for Summary Judgment such that Plaintiffs' remaining claims consisted of: (1) Count II of the SAC, to the extent it asserts a claim against U.S.

---

[1] The HRS does not contain a "§ 667:5-10," and it appears that Plaintiffs intended to cite to HRS § 667-5 et seq.

[2] The court continued the hearing on the Motion for Summary Judgment at the request of the parties to allow for settlement discussions.

3

Bank for failure to comply with HRS § 667-5's requirements that each postponement of the foreclosure be publicly announced, and (2) Count III of the SAC, to the extent it asserts a claim against U.S. Bank for misrepresenting that it would not foreclose during the loan modification process.

On October 23, 2012, a bench trial proceeded on these remaining claims. The parties orally stipulated to admission of all trial exhibits, including Plaintiffs' Exhibits 1-14 and Defendant's Exhibits A-H. Plaintiffs did not present oral testimony, and Defendant presented the testimony of Jerel I. Yamamoto and Henry T. Nakamoto. On November 7, 2012, the parties submitted their Stipulated Preliminary Facts. Doc. No. 132.[3]

## IV. FINDINGS OF FACT

1. On or about July 13, 2006, Plaintiffs entered into an Adjustable Rate Note with PHH for $498,520.00, and a mortgage on the subject property in favor of PHH was recorded in the Bureau of Conveyances of the State of Hawaii as Document No. 2006-142693. Doc. No. 132, Joint Fact ¶ 2.

2. In March 2009, Plaintiffs stopped making payments on their mortgage. *Id.* ¶ 3.

---

[3] The court cites below to the exhibits admitted at the October 23, 2012 bench trial and the parties' Stipulated Preliminary Facts. Where a fact contains no citation, it is based on the trial testimony.

3.      On September 28, 2009, Mortgage Electronic Registration Systems ("MERS"), solely as nominee for PHH, executed an Assignment of Mortgage to U.S. Bank, recorded in the Bureau of Conveyances of the State of Hawaii as Document No. 2009-198707. *Id.* ¶ 4.

4.      On December 31, 2009, U.S. Bank recorded a Notice of Intent to Foreclose ("Notice of Foreclosure") with the Bureau of Conveyances of the State of Hawaii as Document No. 2009-198708. *Id.* ¶ 5.

5.      The Notice of Foreclosure stated that the auction of the subject property would be held on March 2, 2010. *Id.* ¶ 6. This auction date was subsequently postponed several times to allow the parties to determine whether a loan modification was possible.

6.      Jerel I. Yamamoto, Esq. ("Yamamoto") and Henry T. Nakamoto, Esq. ("Nakamoto") were retained by Foreclosure Expeditors/Initiators, LLC ("FEI") to conduct the auction of the subject property on behalf of U.S. Bank. Both Yamamoto and Nakamoto have been practicing attorneys for over twenty years, and have conducted hundreds of foreclosure auctions. At the October 23, 2012 bench trial, both witnesses testified as to their actions in announcing each postponement of the auction, as well as their actions in carrying out the auction that ultimately occurred on July 21, 2010. Based on their demeanor and manner of

testifying, the court finds the testimony of both these witnesses credible and their testimony to be consistent with the other evidence in the record.

    7.     In 2010, auctions of Hawaii County property took place on the Hamakua Lanai of the State Office building, 75 Aupuni Street, Hilo, and were generally scheduled for 12:00 p.m.  Nakamoto testified that on any given auction date, he may have several auctions to conduct and he will address each auction separately.

    8.     When an auction is postponed, it is both Yamamoto's and Nakamoto's practice to appear on the Hamakua Lanai of the State Office building at the date and time of the auction and cry out so that all individuals present can hear the address and tax map key for the property being auctioned as well as the continued auction date.

    9.     The auction of the subject property scheduled to be held on March 2, 2010 was continued to April 2, 2010.  Doc. No. 132, Joint Fact ¶ 7.  Yamamoto received instructions from FEI to postpone the auction and he therefore appeared on the Hamakua Lanai of the State Office building on March 2, 2010 at 12:00 p.m. and announced the postponement of the auction of the subject property to April 2, 2010.  *See also* Def.'s Ex. D (acknowledging postponement).

    10.    The auction scheduled to be held on April 2, 2010 was continued to

May 3, 2010. Doc. No. 132, Joint Fact ¶ 8. Yamamoto again received instructions from FEI to postpone the auction and appeared on the Hamakua Lanai of the State Office building on April 2, 2010 at 12:00 p.m. and announced the postponement of the auction of the subject property to May 3, 2010. *See also* Def.'s Ex. E (acknowledging postponement).

      11.    The auction scheduled to be held on May 3, 2010 was continued to June 7, 2010. Doc. No. 132, Joint Fact ¶ 9. Yamamoto again received instructions from FEI to postpone the auction and appeared on the Hamakua Lanai of the State Office building on May 3, 2010 at 12:00 p.m. and announced the postponement of the auction of the subject property to June 7, 2010. *See also* Def.'s Ex. F (acknowledging postponement).

      12.    In the meantime, Plaintiffs retained Paul Sulla, Esq. ("Sulla"), who contacted U.S. Bank's foreclosure counsel, RCO Hawaii ("RCO"), on June 3, 2010 to inform RCO that Plaintiffs had prepared a Complaint to be filed in the United States District Court for the District of Hawaii. Pls.' Ex. 2. Sulla relayed that Plaintiffs hoped that the Complaint would result in a postponement of the foreclosure sale, and that Plaintiffs were seeking a loan modification. *Id.*

      13.    In a responsive email, RCO told Sulla that it was "recommending a 30-day postponement" of the auction such that Plaintiffs could hold off filing their

lawsuit. Pls.' Ex. 1.

14. Sulla agreed to "hold off the complaint," and further asked RCO whether there was someone in particular Plaintiffs should speak to regarding loan modification or whether they must "stay with the loss mitigation people." Pls.' Ex. 4. In particular, Plaintiffs were looking for "a way to bring [their] mortgage in line with the market value and begin to service it." *Id.*

15. On June 4, 2012, RCO responded, explaining that although there are forbearance agreements and loan modifications, there were no loss mitigation options "as vague and indefinite as what you proposed." Pls.' Ex. 3. RCO further stated, "[i]f you submit evidence of a completed loan mod application through a HUD certified counselor within the next two weeks, the lender usually continues the foreclosure sale month to month until the loan mod is approved or denied." *Id.*

16. The auction scheduled to be held on June 7, 2010, was continued to July 21, 2010. Doc. No. 132, Joint Fact ¶ 10. Nakamoto received instructions from FEI to postpone the auction and appeared on the Hamakua Lanai of the State Office building on June 7, 2010 at 12:00 p.m. and announced the postponement of the auction of the subject property to July 21, 2010. *See* Pls.' Ex. 13 (June 4, 2010 email to FEI stating that "sale postponed from 6/7/2010 to 7/21/10 with reason 'Mutual Agreement'"); *see also* Def.'s Ex. G (acknowledging postponement).

8

17. Beyond the public announcement on the Hamakua Lanai of the State Office building, RCO mailed to several recipients a Notice of Continuance of Sale stating that the auction was postponed until July 21, 2010. *See* Pls.' Ex. 10. Notices of Continuance of Sale sent to Joyce Marvel-Benoist and "Tenant/Occupant" at the address for the subject property were signed for by "Mary Lou Sheehan for Joyce Benoist." Pls.' Ex. 11. RCO also mailed this Notice to Jean-Francois Benoist at his P.O. Box in Honakaa and at the subject property, which were both apparently forwarded to Sheridan, Oregon. Pls.' Ex. 9.

18. On June 22, 2010, Plaintiffs filed their Complaint in this action. In a July 1, 2010 email, Sulla notified RCO of their civil action, stating that it was a "result of your correspondence dated June 17, 2010[4] in this matter and the pending foreclosure sale of my client's home, on June 22, 2010 [sic]."[5] Pls.' Ex. 5. Sulla explained that the civil action was "to restrain the foreclosure sale scheduled for July 22, 2010 [sic] in this matter," and that he hoped that U.S. Bank would agree to another postponement of the auction. *Id.* Sulla further inquired whether RCO would accept service of the Complaint. *Id.*

19. In a July 1, 2010 email response, RCO stated that it does not accept

---

[4] Neither party submitted as an exhibit this June 17, 2010 correspondence.

[5] As stated above, the auction was continued to July 21, 2010.

service unless U.S. Bank expressly agrees. *Id.*

20. In a July 20, 2010 email, Sulla again inquired regarding service of the Complaint, and reiterated his "request that the sale for 7/22/10 [sic] be postponed." Pls.' Ex. 6. In response, RCO stated that it had not received instructions from U.S. Bank, and that "[t]he decision to go to sale or not is the client's not ours." *Id.* In neither of its email responses to Sulla did RCO correct Sulla's misstatements of the auction date.

21. The auction of the subject property was held on July 21, 2010. Doc. No. 132, Joint Fact ¶ 11. Nakamoto credibly testified that the sale occurred shortly after noon on July 21, 2010.

22. In a July 21, 2010 email from FEI, Nakamoto was instructed that the sale date was "7/21/2010" and that the "minimum bid is $390,000." Pls.' Ex. 14. Although the email indicates that it was sent at 3:12 p.m., FEI is located on the west coast such that this email may have been sent at approximately 12:12 p.m. Hawaii time. Further, Nakamoto testified that the clock on their computer was slow such that he could not say whether he had received this email at 12:12 p.m. Hawaii time or earlier. Nakamoto did explain, however, that although he does not recall this specific email, he normally receives instructions from FEI on the auction date shortly before or at noon. Further, if he does not receive instructions,

10

Nakamoto will call FEI for instructions and he will not proceed with an auction until he receives them. The court therefore finds that Nakamoto received instructions from FEI for the auction of the subject property before he held the auction, and that the subject property was auctioned shortly after 12:00 p.m. on July 21, 2010.

23.     At the auction, there were no bidders on the subject property and U.S. Bank took title to the subject property.

## V. CONCLUSIONS OF LAW

24.     At issue for trial are two claims -- whether U.S. Bank failed to publicly announce the postponement of the auctions in violation of HRS § 667-5(d), and whether U.S. Bank misrepresented to Plaintiffs that it would not foreclose on the subject property during the loan modification process. The court addresses these claims in turn.

**A.     Violation of HRS § 667-5(d)**

25.     HRS § 667-5(d), as in effect at the time of the foreclosure, provided:

> any sale . . . may be postponed from time to time by public announcement made by the mortgagee or by a person acting on the mortgagee's behalf. Upon request made by any person who is entitled to notice pursuant to section 667-5.5 or 667-6, or this section, the mortgagee or person acting on the mortgagee's behalf shall provide the date and time of a postponed auction, or if the auction

>    is canceled, information that the auction was canceled.
>    The mortgagee, within thirty days after selling the
>    property in pursuance of the power, shall file a copy of
>    the notice of sale and the mortgagee's affidavit, setting
>    forth the mortgagee's acts in the premises fully and
>    particularly, in the bureau of conveyances.

26. Plaintiffs argue that U.S. Bank failed to comply with HRS § 667-5(d) by failing to (1) properly announce each postponement of the auction; (2) provide notice of the postponements to Plaintiffs and/or Sulla; and (3) carry out the auction as scheduled on July 21, 2010. Based on the following, the court finds that Plaintiffs have failed to establish any of these claims by a preponderance of the evidence.

27. First, as to Plaintiffs' argument that the postponements were not properly announced, Nakamoto and Yamamoto credibly testified that one of them appeared on the Hamakua Lanai of the State Office building, 75 Aupuni Street, Hilo at 12:00 p.m. on the scheduled auction dates of March 2, 2010, April 2, 2010, May 3, 2010, and June 7, 2010. They announced each postponement of the auction by (1) identifying the subject property through address and tax map key, and (2) providing the continued auction date. Plaintiffs have presented no evidence contradicting or questioning this testimony, and have otherwise raised no basis to question that Nakamoto and Yamamoto announced the postponements as they testified. As a result, Plaintiffs have failed to establish by a preponderance of the

evidence that U.S. Bank did not publicly announce the postponement of each auction date in compliance with HRS § 667-5.[6]

28.  Second, as to Plaintiffs' argument that U.S. Bank failed to provide notice of the postponements to Plaintiffs and/or Sulla, Plaintiffs have not established a necessary prerequisite to this claim -- that they were entitled to and requested notice.  Specifically, HRS § 667-5 requires a mortgagee to provide the date and time of a postponed auction "upon request" made by any person who is entitled to notice, and is silent regarding the manner in which notice must be provided once requested.  Plaintiffs have presented no evidence suggesting that they indeed requested to be notified of the date and time of any postponed auction.

29.  And even if Plaintiffs requested and/or were entitled to notice of the postponements, they have not established by a preponderance of the evidence that they were not provided such notice.  Plaintiffs provided no testimony regarding what notice they received and/or their knowledge (or lack thereof) of the postponements.  Instead, Plaintiffs rely on U.S. Postal Service certified mail

---

[6] Nakamoto testified that he brings to the auction a placard providing the address and tax map key for the property being auctioned.  The placard for the April 2, 2010 auction indicates that the sale was postponed until May 5, 2010, and handwriting on the placard states "cont called out."  Def.'s Ex. F.  Plaintiffs argue that Nakamoto must not have properly announced the postponement of the June 7, 2010 auction because U.S. Bank did not produce a placard for this date.  The court rejects this argument in light of Nakamoto's credible testimony that he announced the postponement of the June 7, 2010 auction.

confirmations indicating that certified mail sent to Joyce K. Marvel-Benoist at the subject property was signed on her behalf by Mary Lou Sheehan, Pls.' Ex. 11, and that mail sent to Jean-Francois Benoist was apparently forwarded to an address in Sheridan, Oregon. Pls.' Ex. 9. Contrary to Plaintiffs' argument, these confirmations -- on their own -- do not establish that Plaintiffs did not receive notice of the postponements.

30. Further, to the extent Sulla was entitled to notice (which Plaintiffs have not established as explained above), Plaintiffs offer no testimony regarding what U.S. Bank told Sulla regarding the auction dates. Rather, Plaintiffs argue that U.S. Bank must have told Sulla the incorrect date because he stated in emails to RCO that the auction was scheduled for June 22, 2010 and July 22, 2010. *See* Pls.' Exs. 5-6. Contrary to Plaintiffs' argument, these email exchanges do not suggest that U.S. Bank provided Sulla the incorrect date -- in one email, Sulla wrote that the auction was scheduled for June 22, 2010 as well as July 22, 2010, which more likely suggests that Sulla simply got the dates wrong.[7]

31. Finally, Plaintiffs argue that U.S. Bank could not have carried out the auction as scheduled on July 21, 2010 at 12:00 p.m. because FEI provided the

---

[7] Although Plaintiffs argue that U.S. Bank had a duty to correct Sulla's misstatement of the auction date, HRS § 667-5(d) on its face does not require a mortgagee to correct someone's mistaken belief regarding when an auction is scheduled. Plaintiffs cannot add new claims at this late date and in any event, the court rejects that U.S. Bank had such duty.

instructions for the auction via email on 12:12 p.m. that same day. *See* Pls.' Ex. 14. Contrary to Plaintiffs' argument, this email does not establish by a preponderance of the evidence that the auction did not take place as scheduled. Rather, as explained above, Nakamoto credibly testified that he held the auction as scheduled shortly after 12:00 p.m. on July 21, 2010. And his testimony further explained that the time of 12:12 p.m. on FEI's email was likely incorrect -- during this time the clock on Nakamoto's computer was slow, which means that he would have received this email prior to 12:12 p.m. Further, Nakamoto testified that he would not perform an auction until he receives instructions from FEI and he will call for instructions if he has not received any. Thus, regardless of the time on the FEI email, the court finds and concludes that Nakamoto had instructions when he auctioned the subject property shortly after 12:00 p.m. on July 21, 2010.

32.   In sum, Plaintiffs have failed to establish by a preponderance of the evidence any violation of HRS § 667-5(d). As such, no discussion of damages is warranted or necessary.

**B.   Misrepresentation**

33.   "The elements of intentional misrepresentation are: (1) a false statement; (2) knowledge of the statement's falsity; (3) intent to induce reliance; (4) justifiable reliance; [and] (5) resulting damages." *Boskoff v. Yano*, 57 F. Supp.

2d 994, 1002 (D. Haw. 1998) (citing *Cicone v. URS Corp.*, 183 Cal. App. 3d 194, 227 Cal. Rptr. 887, 890 (1986)).[8]

34.   Plaintiffs assert that U.S. Bank intentionally misrepresented that it would not foreclose on the subject property while Plaintiffs were seeking loss mitigation.  *See* Doc. No. 41, SAC ¶ 94.  As Plaintiffs' counsel explained at the October 23, 2012 bench trial, Plaintiffs base this claim entirely on Sulla's emails with RCO.  None of these emails, however, include any statement from RCO that U.S. Bank would not go forward with the foreclosure while Plaintiffs were seeking loss mitigation.

35.   Rather, at most RCO stated that if Plaintiffs submitted a completed loan modification application, then U.S. Bank *might* continue the foreclosure. Specifically, RCO told Sulla, "If you submit evidence of a completed loan mod application through a HUD certified counselor within the next two weeks the lender usually continues the foreclosure sale month to month until the loan mod is

---

[8] Although Plaintiffs cast their claim as an intentional, as opposed to negligent, misrepresentation claim, a negligent misrepresentation claim is "virtually identical" to an intentional misrepresentation claim, except that the second prong does not require knowledge of the falsity, but rather, the absence of a reasonable ground for believing it to be true.  *See Boskoff v. Yano*, 57 F. Supp. 2d 994, 1002 (D. Haw. 1998) (citing *Shaffer v. Earl Thacker Co.*, 6 Haw. App. 188, 716 P.2d 163 (1986)).  Because the court finds that Plaintiffs failed to establish by a preponderance of the evidence that U.S. Bank made any false statements, any claim for negligent misrepresentation would fail for the same reasons described below.

approved or denied."[9]  Pls.' Ex. 3.

    36.    Further, Sulla's email responses indicated an understanding that foreclosure could still go forward -- in a July 1, 2012 email, Sulla provided RCO the Complaint in this civil action and stated, "[h]opefully your client will agree to postpone the sale in light of this judicial process."  Pls.' Ex. 5.  In other words, Sulla was aware that the foreclosure could very well go forward.  Indeed, when Sulla again requested on July 20, 2010 that the foreclosure be postponed, RCO confirmed that "[t]he decision to go to sale or not is the client's, not ours."  Pls.' Ex. 6.

    37.    The court therefore finds that Plaintiffs have not established a basis for a misrepresentation claim.  As such, no discussion of damages is warranted or necessary.[10]

///

///

///

---

[9] Even if this email could be construed as a representation (which the court does not), Plaintiffs presented no evidence establishing that they indeed submitted a completed loan modification application.

[10] In its Amended Proposed Findings of Fact and Conclusions of Law, U.S. Bank seeks its costs and attorneys' fees.  *See* Doc. No. 133.  This request is inappropriate -- if U.S. Bank believes that it is entitled to these costs and fees, it shall file a motion and comply with Local Rules 54.2 and 54.3.

## VI. **CONCLUSION**

In sum, the court concludes that Plaintiffs have not established that U.S. Bank violated HRS § 667-5(d) or made any misrepresentations upon which Plaintiffs relied.  Based on these Findings and Conclusions, the court orders that Judgment shall enter in favor of the U.S. Bank on all claims.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 15, 2012.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Benoist v. U.S. Bank Nat'l Ass'n, as Trustee for JPM ALT 2006-A6, et al.*, Civ. No. 10-00350 JMS-KSC, Findings of Fact and Conclusions of Law